KINSELLA v. BATES.

GIFTS—EVIDENCE.

In suit to recover fund in possession of defendant who claimed it as a gift from deceased, uncorroborated evidence of defendant who had made inconsistent claims with respect thereto at different times *held,* insufficient to establish gift.

Appeal from Wayne; Taylor (Mark D.), J., presiding. Submitted April 12, 1940. (Docket No. 129, Calendar No. 41,108.) Decided June 3, 1940.

Bill by Evelyn Kinsella, administratrix of the estate of Harry F. Kinsella, deceased, and others

against J. Edgar Bates, Irene Bates, Margaret Kinsella, and Anna Crowe to recover a fund belonging to the estate of Harry F. Kinsella. Decree for plaintiffs. Defendants appeal. Affirmed.

*William Henry Gallagher,* for plaintiffs.

*James Gibbons,* for defendants J. Edgar Bates, Irene Bates, and Margaret Kinsella.

CHANDLER, J. This case involves the question as to whether one Harry Kinsella, now deceased, made a gift during his lifetime of a sum of money to defendant, J. Edgar Bates.

There were no witnesses to the transactions which occurred between deceased and Bates, and his testimony, therefore, is all there is supporting his claim of a gift.

Deceased died on January 26, 1937, and had been confined to a hospital for approximately two weeks prior to that time. Bates testified that on January 13, 1937, deceased requested that he come to the hospital. He complied with the request, taking with him certain shares of stock which he claims deceased had left with him in June of the previous year when deceased departed for Ireland. At that time, according to Bates, deceased said that if anything happened to him, the Packard stock, being a portion of deceased's securities, which was indorsed, should be given to Bates' wife.

When Bates arrived at the hospital, he states that deceased indorsed the shares which had not been previously indorsed, and told Bates to sell them, which was done, the approximate sum of $15,000 being realized as a result of such sale. Bates subsequently returned to the hospital with drafts for the proceeds of the sale, which were immediately in-

dorsed by Kinsella at which time he claims deceased made an absolute gift of the same to him, with the request, however, that he take care of deceased's mother.

He also testified that about a week after the sale of the stock, he again went to the hospital, and the following occurred:

"It seems to me it was on Thursday I went up there, in the evening, the nurse was in the room. He seemed a little better. He asked if Mrs. Kinsella had said anything about his finances, and I said, 'No.' So I didn't stay so long that night. I started on home and got down stairs in the lobby and that particular question bothered me, so I thought I would go back and find out just what it was all about. I went back to the room, asked the nurse if she would leave as I had something to take up with Mr. Kinsella; so I asked him.

"I said, 'Harry, what do you mean by that remark? Just what was it?' and he said, 'Nothing. I just wondered if Evelyn had spoken to you about my finances,' and I said, 'No, she hasn't said anything about that.'

"So I said, 'Harry, have you got anything on your mind? Is there anything you want here or want to do or would like to have done?' and he said, 'No, nothing that has been done.'

"I says, 'Then everything is O. K., right just as you suggested?'

"'Well,' he says, 'I will tell you. I want the Packard stock to stand as it is, as we suggested when I went abroad.' He said, 'I want you to take $1,500 of that money for yourself.'

"After asking him this, that was his suggestion, and he said, 'Take care of my mother and see that she gets what she needs, and when she passes away'— this was to be done after she passed away. That money was not to be disturbed until she passed away. That was his thought, and he said, 'If there is

anything left, I want you to divide it between my wife and my sister.'

"I said, 'Harry, is there any other suggestion you would like to leave with me? If there is anything I can do which will please you, I will be glad to do it.'

" 'No, Ed,' he says, 'there isn't.' He said, 'I think you have a big job to do now,' he said, 'I appreciate it.'

"I started to leave, and he said, 'If at any time before my wife's or my mother's death that Evelyn should remarry,' he said, 'I want you to give her share to Margaret.'

"I said, 'All right, Harry, I will try to carry out your wishes the best I can.'

"*Q.* And as you construe the talk you had upon that day with him, it was merely a suggestion upon his part as to the disposition of this money but not in any way binding upon you?

"*A.* Yes, sir. I cross-examined and got that out of him, and I feel that, as he said, that I should use my own judgment in disposing of that money.

"*Q.* But notwithstanding these directions then, you feel that this money is yours and you may carry out his suggestions or you may adopt your own ideas.

"*A.* Yes sir."

This particular portion of the testimony cannot be reconciled with that which had previously been given as here it is claimed that the Packard stock should be given to Bates' wife, whereas he had theretofore testified that all the stock had been sold several days prior thereto.

Prior to the hearing in circuit court, Bates was examined in the probate court in a proceeding to discover assets belonging to deceased. At this hearing, he testified and took the position that the fund was turned over to him in trust, as compared with the claim made in the circuit court that an outright gift

thereof had been made to him. Subsequent to the death of deceased he wrote a letter to his attorney inclosing a declaration of trust in which he took the position that he was a trustee. Both of these inconsistent positions cannot be true.

In the probate court he testified that $1,000 of the fund was deposited in the bank for the purpose of paying medical and hospital bills and that this was done in accordance with deceased's wishes. On the same issue in circuit court, he testified that he had had no conversations with deceased relative to the payment of doctors' and nurses' bills.

In probate court he testified that the understanding with deceased was that if deceased recovered from his illness, the money was to be returned to him. In the circuit court, he denied the existence of such an understanding.

Another point to be mentioned is the fact that prior to the institution of this proceeding he advised plaintiffs' attorney by letter that he had no knowledge of any assets belonging to deceased.

We have not recited in detail all of the testimony or commented upon all of the inconsistencies therein. The result reached obviously must depend upon whether or not the testimony of Bates to the effect that a gift to him was completed is to be accepted.

Of this testimony, the trial court, in entering a decree for plaintiffs for a recovery of the fund, less sums expended by him for hospital and medical bills, said:

"Decision of this case rests largely on the credibility to be given to the testimony of defendant J. Edgar Bates. To say that his story is fantastic is putting it mildly. The court could comment at length upon his testimony but such seems unnecessary. The record speaks for itself. Suffice it to say the court does not believe any of its material points. As the

court observed his actions on the witness stand and listened to his testimony it became increasingly evident that his testimony was not credible. The longer he talked the less the court believed.

"Plaintiffs have more than established their right to the relief asked in the bill of complaint and the same is granted."

We have reviewed all the testimony, and, bearing in mind the fact that the trial court heard the same as it came from the lips of the witness, and had an opportunity of observing him testify, we find no reason whatsoever which should cause us to substitute our judgment for his as to the credibility of the witness.

We, therefore, affirm the decree, with costs to plaintiffs.

BUSHNELL, C. J., and SHARPE, POTTER, NORTH, McALLISTER, WIEST, and BUTZEL, JJ., concurred.